In the Matter of the Estate of Ethel A. Veihman, an Incompetent, Now Deceased.

John E. Schrodt, Administrator of the Estate of Ethel A. Veihman, Deceased, Plaintiff-Appellee, v. E. Guy Mundy, Conservator of the Estate of Ethel A. Veihman, an Incompetent, Now Deceased, Defendant-Appellant.

Gen. No. 64–101.

Fifth District.

December 27, 1965.

Townsend, Townsend & Schafer, of Mt. Carmel, for appellant.

Foreman, Meachum & Clapper, of Danville, and Woodcock & Ellsworth, of Mt. Carmel, for appellee.

EBERSPACHER, J.

On April 5, 1943, E. Guy Mundy was appointed Conservator for Ethel A. Veihman, an incompetent, by the County Court of Wabash County, and filed annual reports thereafter until the death of his ward. His first annual report was filed on January 6, 1944, covering the period to January 1, 1944. In this first report he listed his fees at $125, but on approval on February 18, 1944, the Court made a finding that his fees to January 1, 1944, should be $475 and directed the Conservator to take additional fees of $350, which Conservator did and reported in the next report. Thereafter, shortly after the first of each year, the Conservator filed an annual report for the preceding calendar year. Upon approval by the Court of such annual report, the Court in its order determined and fixed the fee for the preceding year, which was then reported and shown paid in the next report. This practice is shown followed until 1954. The 1954 report, and subsequent reports, included the

Conservator's fee. They were approved, and in most cases the Order of Approval included an allowance of the Conservator's fee in the amount shown by the report, but no fixing of the fee by the Court. The record shows that the Order of Approval (including the fixed fee or the allowed fee), of each of the current reports was entered without the giving of notice, or the appointment of a Guardian ad Litem.

Ethel A. Veihman died July 17, 1963, and on August 15, 1963, Mundy filed his final report as Conservator covering January 1, 1963 to August 15, 1963, in which credit was asked for $680 for fees for 1963. On February 24, 1964, the Court set the final report for hearing and appointed an attorney as Guardian ad Litem, who on March 6, 1964, filed an answer demanding strict proof, and on June 2, 1964, filed his further answer in which he set forth examination of all court records and of the account book of the Conservator; it also alleged that the fees of the Conservator for the duration of the Conservatorship appeared reasonable and commensurate with services performed and that the Guardian ad Litem was satisfied as to the truth and correctness of all matters over the long period during which Guy Mundy served as Conservator.

Afterward John E. Schrodt, Plaintiff, having become Administrator of the Estate of Ethel A. Veihman, deceased, filed objections to the final report and all annual reports of the Conservator and to the answer of the Guardian ad Litem, alleging as one of his objections, excessive fees to the Conservator for all years excepting from April 5, 1943, to December 31, 1943. The objections also included charges of improper management of the estate, with which we are not concerned, although argued in appellee's brief, since no cross appeal was filed. The objections included an exhibit setting forth the income, the Conservator's fee, and the percentage of the income taken for a fee for each year. These per-

centages vary from 5.2% to 15.4% with the percentage for the period in 1963 being 28.3% of the income for that period.

The record discloses that in each year through 1956, more than 50% of the income resulted from the production of oil on a 200-acre farm of which about 100 acres were tillable, owned by the ward and her daughter; the farm had apparently been producing oil previous to the appointment of Mundy, and as Conservator throughout the entire period, all he did with reference to the oil income, was to receive the checks, deposit them, and keep the proceeds properly invested. Other income came from rental of a town property owned by the ward and the landlord's share of the farm income. In 1957 and the subsequent years, the largest item of income was interest from U. S. Bonds, and from paid-up stock in building and loan associations, the income from the oil decreasing. Evidence at the hearing disclosed that the Conservator thought there were 7 oil wells on the farm at one time but that the Conservator did not know how many were producing at the time of the hearing; and that the farm income was paid to the Conservator by the tenant, although he and the tenant made decisions as to crops to be planted, fertilization and crop rotation. The Conservator caused minor repairs to be made to the farm buildings from time to time. The Conservator testified that the farm was located about one mile from the county seat in which he resided. He had no definite knowledge as to acreage of the various fields, yields, or fertilizers used, and was, according to his testimony, primarily dependent on the tenant concerning the administration of the farm. During the Conservatorship, the State acquired a portion of the farm, including the house, for highway purposes for which the estate was paid in excess of $5,000.

Examination of the reports discloses that the assets of the estate as shown by the 1943 report, exclusive

of real estate and the oil wells thereon, amounted to $11,779.33 and that the assets shown by the final report, excluding real estate, amounted to $80,642.14. The parties stipulated that the total income for the period for which the Conservator's fees were objected to was $147,359.40; from the farm $19,006.93; rent from the building $8,214.04; from interest and oil royalties $120,138.43; and that the total fees charged by the Conservator for the period amounted to $11,955. The increase in the value of the estate is principally accounted for by the sale to the State and the fact that the expenditures on behalf of the ward, who was during the earlier years in a nursing home, and later in a State institution, were comparatively small. Total expenditures, including repairs to real property, taxes, expenses of administration, and sustenance of the ward, annually amounted to $1,400 to $4,000, with the personal living expenses of the ward remaining constant at approximately $1,000 annually.

On behalf of the objector, the trust officer of a Danville bank, testified that the usual and customary fees for a Conservator were 5% of ordinary income, and where there were added responsibilities such as farm management, 7% would be usual and customary. One of the Conservator's witnesses testified that a local bank, which had actively engaged in administering trusts, charged 5% of gross income for performing ordinary duties of a conservatorship, but did not furnish farm management services, but also charged an acceptance charge of ¼th of 1% and a 1% termination charge, both based on total assets. The Guardian ad Litem was called by the Conservator and testified that after thorough examination of the accounts, realizing that the fees amounted to 8.1% of the gross income, he considered the fees reasonable, and concluded that in some respects he considered the conservatorship unusual, but did not point out any unusual aspects.

27

The Court, after hearing the evidence entered an order containing the following findings:

1. That each of the annual reports were presented and approved by the court in an ex-parte proceeding, which reports had inserted therein the conservator's fees and in some cases attorney fees, without any formal hearing or notice and without anyone to object to the report of fees therein, there having been no Guardian ad Litem appointed to represent the interest of the ward, and the sole living person who might have objected was the incompetent's daughter, Camille C. Veihman, for whom E. Guy Mundy was also conservator of the estate.

2. That the Court has jurisdiction in this hearing to reexamine all of said annual reports and the objections raised thereto.

3. The Court finds from the evidence that for the services rendered by the conservator for the estate he was entitled to and should receive a reasonable and fair fee therefore, and the court finds that a fair and reasonable fee should have been and is as follows:

(a) 7% of all building and farm rents and farm income, other than oil royalties, said conservator having helped manage and supervise the farm and rental buildings, said rents and income being $27,220.97.

(b) 5% of all other income, said income from oil royalties, dividends, and interest being $120,138.43, said income being ordinary income involving no services other than ordinary bookkeeping services.

4. That fees heretofore charged by Conservator in excess of said 7% and 5% are excessive.

28

5. That conservator has performed or rendered no special or unusual service for the estate of the ward that would justify the allowing of or charging other than customary fees.

6. That the conservator has acted reasonably and in accordance with his duties in his investments of assets of the estate and in maintaining the Surety Bond including the annual premiums thereon.

7. That the conservator had available and tendered in court all receipts, vouchers, and books covering the period since his appointment and no mismanagement or irregularities has been shown to the court therefrom except as to the matter of conservator's fees,

and ordered all objections, except as to the Conservator's fee, overruled, and "that the Conservator on Final Account be surcharged for excessive fees and compensation in the sum of $4,042.62, being the difference between the $11,955.00 fees received by the conservator and the fair and reasonable fees of $7,912.38."

From this order the Conservator has appealed, conceding ex parte orders involving Conservator's annual reports are subject to review upon the filing of the final report, but argues that such rule is only applicable where there has been mistake, fraud, lack of authority or a wrongful use of judgment. He particularly contends that the fixing and approval of the fees was a matter within the sound discretion of the particular judge sitting at the time the fee was fixed or approved,[1] and that it must be presumed that such judge acted with due discretion,

[1] The current reports through 1953 were approved, and the fee fixed by the then County Judge, current reports of 1954 through 1961 were approved and the fee allowed by the successor County Judge, and the current report for 1962 was approved by the County Judge, who as Associate Circuit Judge entered the order involved in this appeal.

29

since no abuse of discretion is shown, and urges that the fact that the fee was fixed or allowed in ex parte proceedings, does not of itself show wrongful use of discretion.

We do not consider that the discretion of the predecessor judges was an issue in this case. Where there is an absence of fraud or misconduct, and there is no hearing, and no one to object, and no record of any proceeding is made, we cannot say that the predecessor judges performed any act involving discretion, but rather mechanically performed an act of little judicial significance.[2]

In the case of Nonnast v. Northern Trust Company, 374 Ill 248, 29 NE2d 251, affirming 300 Ill App 537, 21 NE2d 796, our Supreme Court said:

> "No notice was given when the Trust Company filed its first and final account as conservator, . . . and the probate court properly held that the conservator's account, as well as the executor's accounts, were subject to objection by appellees."

And quoting Mr. Justice Cardozo, continued:

> "Many forms of conduct permissible in a workaday world for those acting at arms length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter that the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has 'been the attitude of Courts of Equity when petitioned to determine the

---

[2] A practice commonly followed in the circuit courts, in probate matters where reports are filed, and the moving party does not wish to incur the expense of notice and a formal hearing, to merely note the current reports as "filed;" (rather than "approved" and the fees shown therein as "fixed" or "approved"), is recommended.

rule of undivided loyalty by the 'disintegrating erosion of particular exceptions.' "

Appellant argues that the Probate Act makes no requirement that notice of annual reports of a Conservator be given, except where the Veterans Administration is involved. We interpret section 310 of the Probate Act, chapter 3, sec 310 Ill Revd Stats otherwise, and hold that regardless of a showing of fraud or any misconduct, where there is a lack of notice and formal hearing, neither the ward nor his personal representative are bound by the order of approval. The last two sentences of section 310 (supra) are as follows:

"If notice of the hearing on any account except the final account of a guardian or conservator is served on the ward at least ten days before the hearing on the account and the court appoints a guardian ad litem to represent the ward at the hearing in the absence of fraud, accident, or mistake the account as approved is binding upon the ward. Notice of the hearing on any final account of a guardian or conservator shall be given to the ward if he is living and to such other persons and in such manner as the court directs."

The rule in Illinois is well established and agreed upon. In Horner, Probate Practice and Estates, it is stated:

"In the absence of notice, even a final accounting is not binding on the ward,"

citing Raymond v. Vaughn, 128 Ill 256, 21 NE 566. In James, Illinois Probate Law and Practice, at section 310, on page 341, commenting on section 310 of the Probate Act it is stated:

"The last two sentences are new, and will enable a guardian or conservator to have an order approving a current account made binding on the ward, in the

31

absence of fraud, accident or mistake, thus changing the former law in this regard,"

and in section 310.1 continued:

"If annual or current accounts of a guardian or conservator are approved ex-parte, such approvals are not conclusive, but only prima facie evidence of the correctness of the amount stated,"

citing Hess v. Griffith, 186 Ill App 609 and Lehmann v. Rothbarth, 111 Ill 185. And continuing in section 1396 (b) it is stated:

"If it is desired that the account (other than a final account) as approved shall be binding on the ward, proof of service of notice on him at least ten days before the hearing must be presented, and a guardian ad litem must be appointed by the court to represent the ward at the hearing."

The fact that the reports were approved or the fees fixed under such circumstances, by a predecessor or predecessors in office does not in our opinion vary the rule.

Having thus disposed of this argument we are now only confronted with whether or not there was sufficient evidence to overcome the prima facie correctness of the Conservator's fees as previously fixed or determined. The evidence does not disclose that the Conservator performed any unusual or extraordinary functions. While he is to be commended for faithful performance of his duties, and the increase of assets, he did only what the law required, with what appears to have been a minimum of effort. There was testimony as to the usual and customary fees of a Conservator to support the order. The current reports themselves reflect the activity of the Conservator, and the record shows that little business acumen was required to receive

oil checks, the farm income, and interest, and nothing more than ordinary ability and accepted business practice was involved in the operation of the business building, and investment of the funds.

As was said in In re Estate of James, Deceased, 10 Ill App2d 232, 134 NE2d 638,

"This Court cannot say that the determination of the trial court is manifestly or palpably erroneous and finds nothing that would justify it in overruling the judgment of the Circuit Court."

The order of the Circuit Court of Wabash County is therefore affirmed.

GOLDENHERSH and MORAN, JJ., concur.